[Cite as *In re A.M.N.*, 2010-Ohio-6717.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: A. M. N.


ANDREW T. NEWLAND

     Applicant


Case No. V2009-40803

Commissioners:
Elizabeth Luper Schuster, Presiding
Gregory P. Barwell
Randi M. Ostry

## ORDER OF A THREE-COMMISSIONER PANEL

{1}On May 29, 2009, the applicant, Andrew Newland, filed a compensation application on behalf of his minor child A.M.N. On September 11, 2009, the Attorney General issued a finding of fact and decision determining that A.M.N. qualified as a victim of criminally injurious conduct and the applicant met the necessary jurisdictional requirements to qualify to receive an award of reparations. The applicant was granted an award in the amount of $82.71, which represented mileage expenses. The applicant's claim for reimbursement of medical expenses was denied based on the fact they have been or could have been recouped from a readily available collateral source, Medicaid. The applicant's claim for work loss was denied based on his failure to supply necessary documentation. Finally, the applicant's request to build a privacy fence was denied since such cost was not compensable under the program.

{2}On September 14, 2009, the applicant submitted a request for reconsideration. On November 13, 2009, the Attorney General rendered a Final Decision finding no reason to modify his initial decision. On November 19, 2009, the applicant filed a notice of appeal from the November 13, 2009 Final Decision of the

Attorney General.   Hence, a hearing was held before this panel of commissioners on January 20, 2010 at 11:10 A.M.

{3}The applicant and the applicant's attorney, Michael Falleur, appeared, while Assistant Attorney General Lyndsay Nash represented the state of Ohio.

{4}The applicant asserts the sole issue on appeal is whether the construction of a privacy fence meets the definition of an allowable expense as contained in R.C. 2743.51(F)(1).   A six-foot high fence would separate the victim's home from the offender's home and a four foot section of fence would attach to the other neighbor's existing fence.   The applicant asserts this fence would meet the requirements outlined in a letter from Melanie James, Center for Child and Family Advocacy, Nationwide Children's Hospital dated June 29, 2009.   In that letter, Ms. James felt a fence "would be therapeutically beneficial by reducing the physical and visual contact" with the offender.

{5}The Attorney General's position was that the applicant has not sustained his burden to prove that the fence is an allowable expense pursuant to R.C. 2743.51(F)(1).

{6}The applicant, Andrew Newland, was called to testify.   Mr. Newland related the background surrounding the sexual abuse of his minor son A.M.N. by a teenage neighbor boy.   The applicant briefly related the subsequent criminal prosecution of the offender, which is currently pending.

{7}The applicant was presented with Applicant's Exhibit 1, an aerial photograph of the neighborhood.   The applicant indicated the location of his home, the offender's home, and the location of the home of another victim of the offender.   The backyard of the applicant's home abuts the backyard of the offender's home.   Where the backyards adjoin, the applicant wishes to erect a six-foot section of fence.   The applicant asserts that his son, the victim, would feel safer if there was no visual contact with the offender. The four-foot section of fencing would separate his property from other neighbors and the fence would be of a style to conform to other neighborhood fencing.   Exhibit 2 was

then presented.  Exhibit 2 revealed the style of the four-foot fencing.  Exhibit 3 depicted the back of the applicant's home showing that there are no windows.  A four-foot fence would be erected between the applicant's property and the property of another neighbor boy who had also been a victim of the same offender.  Exhibits 4 and 5 were then presented with different views of a deck and the applicant related where the placement of the six and four-foot sections of fencing would be erected.

{8}The applicant related he received an estimate from the Trudeau's Fencing Company to erect sections of six foot and four foot fencing as outlined in his testimony. The applicant related he signed an agreement for remedial treatment and care with the Trudeau Company for the building of the fence in the amount of $6,421.00.

{9}Upon cross-examination, the applicant conceded that the victim's bedroom faces the offender's home and is located on the second floor.  Even with a six-foot privacy fence the victim would be able to view the offender's residence.   The applicant admitted that the offender could see around the sections of fencing that were four feet in height.   Whereupon, the testimony of the applicant was concluded.

{10}In closing the applicant believes the panel should rely on the holding in *In re Kaiser*, V90-56922tc (10-25-91).   A fence would reinforce the counseling the victim has received and provide a valuable therapeutic safe guard.   The applicant asserts the fence will assist with the remedial healing and treatment of A.M.N.   Upon questioning by the panel of commissioners, the applicant conceded that the outcome of the criminal case against the offender could be a determining factor in whether the fence would be necessary.

{11}Attorney General contends that the building of the fence is not reasonable, since the majority of the fence is four feet which will not prevent the offender from viewing the victim.   Additionally, the applicant testified the victim's second-floor bedroom overlooks the offender's backyard so even a six-foot fence would not prevent visual contact.   The Attorney General questioned how much protection a fence would offer the victim.   The Attorney General distinguished the holding in *In re Kaiser* from the

case at bar, since in *Kaiser* security bars protected the victim from another break-in of her home, while the four-foot section of fence would not provide the same protection. The Attorney General also addressed the issue of the juvenile court hearing concerning the offender. If the offender was removed from his home a fence would not be necessary.

{12}Both parties agreed that a decision in this matter should be stayed until the outcome of the juvenile hearing against the offender is completed. Accordingly, the panel of commissioners' stayed the claim until the juvenile hearing is concluded. Whereupon, the hearing ended.

{13}On February 17, 2010, a status conference was held concerning the juvenile matter. Due to the fact that the juvenile proceedings were still pending, the parties made a joint motion for continuance. On February 25, 2010, this panel issued an order granting the parties' joint motion and setting another status conference for March 17, 2010.

{14}On March 17, 2010, a status conference was held. The Attorney General related the offender was adjudicated delinquent for two counts of sexual imposition. Sentencing would not occur until the end of April and it was unclear whether the offender would remain in his home. The Attorney General confirmed that there was a "no contact order" in place. The applicant presented an estimate by the Trudeau Fence Company for a six-foot fence encompassing the property at the cost of $16,686.50. On April 7, 2010, the Attorney General filed a motion to schedule an additional status conference. On April 30, 2010, this panel issued an order scheduling a status conference for June 16, 2010.

{15}On June 16, 2010, a status conference was held between the parties and the panel of commissioners. At that time it was revealed that although the offender was adjudged delinquent he would remain in his home. On June 16, 2010, the applicant supplied fence estimates from the Trudeau's Fence Company. The estimate

presented four options 1) a six-foot fence for the area in question in the amount of $16,686.50; 2) "deduct the neighbor's 115' of 6' fence + stain + removal of old fence DEDUCT $4,600.00 = $12,086.50 shadow box and stain"; 3) "6' + 4' DE Solid Board with 2 gates + stained one coat $10,750.00 (This was not including the 115' of neighbor's fence)"; and 4) "6' + 4' White Vinyl privacy with 2 gates $15,000.00 or $16,500.00 for two (This was not including the 115' of neighbor's fence)."

{16}R.C. 2743.51(F)(1) in pertinent part states:

"(F)(1) 'Allowable expense' means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, rehabilitation, rehabilitative occupational training, and other remedial treatment and care and including replacement costs for eyeglasses and other corrective lenses."

{17}From review of the case file and with full and careful consideration given to the testimony of the applicant and arguments of counsel, we find the privacy fence is an allowable expense within the meaning of R.C. 2743.51(F)(1).   We are convinced by the testimony of the applicant and the letters submitted by Melanie James, Center for Child and Family Advocacy, Nationwide Children's Hospital, and Lourdes Hill of the same organization, that the erection of a privacy fence would assist in A.M.N.'s remedial treatment and care.

{18}Ms. James in pertinent part stated:

"It is also clinically helpful if physical and visual contact, with his offender, be reduced, and due to the current close proximity of A.M.N. and his offender's yard with limited barriers, this can be triggering for him.  These triggers make the progress in treatment very difficult and could increase a child's behaviors and symptoms.  A fence for the Newland home would be therapeutically beneficial by reducing the physical and visual contact A.M.N. has with his identified perpetrator and could assist in his

caregivers being able to appropriately manage his symptoms and move towards healing."

{19}Ms. Hill in pertinet part stated:

"It is also clinically helpful if physical and visual contact with his offender be reduced as this can impact treatment outcome.   Specifically, the current close proximity of A.M.N. and his offender's yard with limited barriers can be triggering for A.M.N.

{20}"Furthermore, these triggers make treatment progress very difficult and could increase a child's behaviors and symptoms.   A fence for the Newland home would be therapeutically beneficial by reducing the physical and visual contact A.M.N. has with his identified perpetrator and could assist in his caregivers being able to appropriately manage his symptoms and move towards healing."

{21}We find the case at bar analogous to *In re Kaiser*.   While the *Kaiser* case involved the installation of security bars on Kendra Kaiser's home after a home invasion, the panel decision emphasized the security bars were "reasonably necessary for her rehabilitative treatment and care."   While the bars provided for physical security, the main purpose of their installation was to provide "emotional well-being."

{22}In the case at bar, we believe that the victim should be able to use his backyard without the physical fear and emotional trauma associated with visually confronting his offender.   Therefore, we find the privacy fence constitutes an allowable expense as defined by R.C. 2743.51(F)(1).   The six-foot section of fence provides a buffer between their backyards, yet the four-foot section of fence blends into the surrounding neighborhood allowing A.M.N. to maintain contact with his neighborhood friends.   A six-foot fence surrounding his entire property would convey the impression that the victim was being enclosed from the surrounding neighborhood; in a sense, that he was being confined for the actions committed against him.

{23}We believe the best option, taking into consideration the cost involved and the integrity of the Crime Victim's Compensation Fund, would be option 3 provided by the Trudeau's Fencing Company.   That option is the "6' + 4' De Solid Board with 2

gates + stained one coat $10,750.00 (This is not including the 115' of neighbor's fence)."

{24}Therefore, the November 13, 2009 Final Decision of the Attorney General is reversed.

IT IS THEREFORE ORDERED THAT

{25}1)   Applicant's Exhibits 1, 2, 3, 4, and 5 are admitted into evidence;

{26}2)   The November 13, 2009 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant in the amount of $10,750.00;

{27}3)   This claim is remanded to the Attorney General for payment and monitoring to ensure that an agreement is entered into between the applicant and Trudeau Fence Company and a fence as envisioned by this order is completed;

{28}4)   This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{29}5)   Costs are assumed by the court of claims victims of crime fund.

<br>

_____
ELIZABETH LUPER SCHUSTER
Presiding Commissioner

<br>

_____
GREGORY P. BARWELL
Commissioner

_____
RANDI M. OSTRY
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2010\Sept - Nov 2010\V2009-40803.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 11-19-10
Jr. Vol. 2277, Pgs. 85-92
Sent to S.C. Reporter 10-11-11